UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────

MARK ANTHONY ADELL,

          Plaintiff,

     v.                                   Case No. 20-C-1617

WAUPUN MEMORIAL HOSPITAL, et al.,

          Defendants.

─────────────────────────────────────────────

## SCREENING ORDER

─────────────────────────────────────────────

Plaintiff Mark Anthony Adell, who is currently serving a state prison sentence at Waupun Correctional Institution (WCI) and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on Plaintiff's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Plaintiff has requested leave to proceed without prepayment of the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Plaintiff also moves to waive payment of an initial partial filing fee. Dkt. Nos. 3 & 8. A review of his trust account statement shows he lacks the funds to pay the partial filing fee. Therefore, the court **GRANTS** Plaintiff's motions and waives the initial partial filing fee. 28 U.S.C. § 1915(b)(4).

### SCREENING OF THE COMPLAINT

The court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint

or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, I must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, Plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

2

### ALLEGATIONS OF THE COMPLAINT

Plaintiff sues Waupun Memorial Hospital (WMH), a Jane Doe Registered Nurse employed at WMH, WCI Sergeants Voight and Hawkins, Tonia Moon, J. Muenchow, the WCI Security Director, ICE Supervisor CPS Pusich, and a John Doe correctional officer at WCI. Plaintiff asserts that WMH and Nurse Jane Doe are proper defendants because the Wisconsin Department of Corrections has contracted with the hospital to operate a prison medical ward at WMH staffed by Department staff.

Plaintiff alleges that on August 31, 2020, he was admitted to WMH to receive medical treatment. On September 5, 2020, Plaintiff experienced a significant headache and pressed the emergency-call button. Jane Doe quickly responded, and Plaintiff requested his migraine medication. Jane Doe dispensed the medication, but Plaintiff's condition worsened. He again called for emergency assistance, and Jane Doe returned to assess his condition. She instructed Plaintiff to look directly at her, but Plaintiff alleges his condition prevented him from complying. Jane Doe responded "in a smug tone[,] 'I can't help you,'" and left. Dkt. No. 1, ¶ 16.

Plaintiff alleges he was left alone in severe pain for hours, yelling for help, and banging on the room door. He alleges the pain was so severe it caused him to vomit, defecate, and roll around in his bed and on the floor. He alleges Jane Doe deactivated his emergency call button to prevent him from calling for help. The John Doe correctional officer delivered Plaintiff's dinner tray, but Plaintiff alleges the officer unloaded all items from the tray to avoid having to return to collect them. Plaintiff alleges the officer "was acting in concert with" Nurse Jane Doe to abandon him in the cell. *Id.* ¶ 19.

Eventually Plaintiff's doctor (who is not a defendant) came to Plaintiff's cell, examined him, ordered Nurse Jane Doe to provide Plaintiff hydromorphone, and had Plaintiff taken for a

3

CAT scan. Plaintiff asserts Jane Doe had reactivated the emergency call button, and she dispensed his medication only after he pressed the button again. Two correctional officers (who are not defendants) took Plaintiff for the CAT scan and returned him to his cell with instructions to rest. Plaintiff alleges a second unknown nurse (who is not a defendant) later woke him to perform a nursing assessment. Plaintiff asked to rest for a longer time, and the nurse allegedly told him "in a smug tone" that he would receive the assessment "now or never." *Id.* ¶ 24. Plaintiff declined the assessment. The John Doe correctional officer returned to take away the food Plaintiff had not had a chance to eat and "smugly" stated, "I guess you won't be needing this food." *Id.* ¶ 26. Plaintiff insists the John Doe officer deprived him of food in retaliation for refusing the nursing assessment and as part of his collusion with Nurse Jane Doe to deny him treatment.

Plaintiff alleges that Sergeants Voight and Hawkins monitor security cameras in the prison medical ward at WMH but refused to intervene and protect Plaintiff from the actions of Nurse Jane Doe and Officer John Doe. He alleges he spoke with Voight and Hawkins later, and both refused to review video from the September 5, 2020 incident. He also asserts that at least one of them was on duty on September 5, 2020, and "should have overheard" him yell for help. *Id.* at 14. Plaintiff also wrote to WCI's Security Director to request that he review the security footage from September 5, 2020. Plaintiff did not receive a response. Plaintiff states he requested medical records from WMH about the day in question, but he received only unrelated records.

Plaintiff returned to WCI on September 8, 2020, and the next day submitted an inmate complaint about what happened to him at the hospital. Defendant Moon rejected Plaintiff's complaint a week later, directed Plaintiff to file a complaint about the nurse with the hospital, and explained that the prison's inmate complaint office "cannot investigate the hospitals staff." *Id.* ¶ 33; Dkt. No. 1-1 at 5. Plaintiff attached to his § 1983 complaint health service request forms that

4

show prison staff twice provided Plaintiff information on who to contact at the hospital to report the incident and how. Dkt. No. 1-1 at 4, 6. Nonetheless, Plaintiff submitted another inmate complaint. Moon returned (but did not reject) that complaint and directed Plaintiff to fix errors in it. Plaintiff rewrote and resubmitted the inmate complaint, which Moon rejected, again explaining that the inmate complaint office cannot investigate hospital staff. Plaintiff filed another inmate complaint, this time accusing Moon of improperly denying his previous complaints. He also resubmitted one of his previously rejected complaints, which Moon did not acknowledge or return.

On October 1, 2020, Plaintiff received a letter from Defendant Muenchow explaining that he was returning Plaintiff's complaint against Moon and that he must first contact Moon's supervisor "CPS, Pusich" in an attempt to informally resolve the issue. Plaintiff reached out to Pusich, who stated that Moon had appropriately denied Plaintiff's earlier complaints. On October 6, 2020, Plaintiff resubmitted his complaint against Moon.

Plaintiff also states that on September 18, 2020, he wrote to WMH requesting a review of the September 5, 2020 incident involving Nurse Jane Doe. He did not receive a response. He also submitted a petition for a criminal investigation into the incident under state law. The Dodge County Circuit Court declined to investigate the incident and advised Plaintiff to address the incident through the prison's inmate-complaint system or civil litigation. *Id.* at 26.

Plaintiff seeks compensatory, punitive, and nominal damages and unspecified declaratory judgment. He also requests a "finding that negligence (state law) be decided in federal court." Dkt. No. 1 at 18.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this

5

deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

The court reviews Plaintiff's claim that Nurse Jane Doe denied or delayed his medical care under the Eighth Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, Plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see Estelle*, 429 U.S. at 103.

"A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). "[E]ven brief, unexplained delays in treatment may constitute deliberate indifference." *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015)).

Plaintiff alleges that he suffered a severe migraine or headache that caused him to vomit and defecate, left him unable to eat or sleep, and caused him great pain. I will assume for purposes of this decision that his condition was objectively serious. He also alleges that Nurse Jane Doe was aware of his condition and intentionally left him alone in his cell without any treatment. He

alleges she later delayed providing him pain medication his doctor had prescribed to treat his pain. These allegations sufficiently state an Eighth Amendment claim against Nurse Jane Doe.

A suit under § 1983, however, may be brought only against government officials or employees or individuals who acted "under color of state law." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). A private party may act under color of state law only when the party "acted together with or . . . obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

Plaintiff alleges that Nurse Jane Doe is a state actor because she worked in the prison medical ward at WMH, which has contracted with the Department of Corrections to provide medical treatment to inmates in its institutions. I will assume, only for the purposes of screening, that Jane Doe was acting under color of state law when she treated (and failed to treat) Plaintiff at WMH on September 5, 2020. Plaintiff will be required to use discovery to confirm that Jane Doe was a state actor at the time and is a proper defendant in this suit. *See Rodriguez*, 577 F.3d at 830.

Plaintiff also seeks to hold WMH responsible for the delay in his treatment on September 5, 2020. He insists that WMH also is a proper party in this suit based on the contractual relationship it allegedly has with the Department of Corrections. I will assume for purposes of this decision that he is correct and that WMH was a state actor when he was treated there on September 5, 2020. *Id.* at 831–32. Even so, a private corporation (like WMH) that has contracted to provide essential government services, such as health care for prisoners, "cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). The private corporation may not be held liable for the actions of its employees under a theory of *respondeat*

*superior*. *Id.* (citing *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)); *see also Rodriguez*, 577 F.3d at 832. Plaintiff must allege "that his injury was caused by a [corporation] policy, custom, or practice of deliberate indifference . . . or a series of bad acts that together raise the inference of such a policy." *Shields*, 746 F.3d at 796 (citing *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)).

Plaintiff does not allege that Nurse Jane Doe acted pursuant to a WMH practice, policy, or custom. Nor does he allege a series of bad acts from which the court could infer that such a practice or policy existed. Plaintiff's doctor provided adequate treatment, suggesting there was no unspoken policy at WMH to delay or deny inmates treatment. Plaintiff instead alleges that Jane Doe acted on her own (or perhaps with the John Doe officer) to deny or delay his medical treatment. He also alleges that the hospital did not send him all the records he requested, but he has no federal right to receive specific hospital records. Even assuming WMH could be considered a state actor for purposes of this lawsuit, Plaintiff does not allege a basis to hold the hospital responsible under § 1983. I will not permit Plaintiff to proceed against WMH.

Plaintiff alleges Officer John Doe intentionally left Plaintiff's food tray items in the cell so he would not have to retrieve them later. Yet he also alleges that John Doe did return later to retrieve the food Plaintiff had not eaten. Plaintiff alleges John Doe both left the items and later retrieved them as part of his collusion with Nurse Jane Doe to deprive Plaintiff of medical treatment. Plaintiff's claims are based entirely on speculation. Such speculative, conclusory claims "are not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 679, and cannot form the basis for a claim that Jane Doe and John Doe were colluding to deny him medical treatment, *see Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).

8

Plaintiff also alleges that Officer John Doe took away his food in retaliation for refusing a nursing assessment. To state a claim of retaliation, Plaintiff must allege that "he engaged in a protected activity, he suffered a deprivation likely to prevent future protected activities, and there was a causal connection between the two." *Felton v. Huibregtse*, 525 F. App'x 484, 486 (7th Cir. 2013) (citing *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Plaintiff's allegedly protected activity was declining the nursing assessment. Inmates have a constitutionally-protected interest in declining unwanted medical treatment. *Russell v. Richards*, 384 F.3d 444, 447 (7th Cir. 2004) (citing *Cruzan v. Director, Missouri Dep't of Health,* 497 U.S. 261, 278–79 (1990); *Washington v. Harper,* 494 U.S. 210, 221–22 (1990)). Assuming the assessment qualifies as medical treatment, Plaintiff's refusal could qualify as protected activity. Plaintiff also alleges that John Doe took his food immediately after Plaintiff refused the assessment, an act that could reasonably deter future protected activity. Although uncertain, Plaintiff sufficiently states a claim of retaliation against the John Doe correctional officer.

Plaintiff seeks to hold Sergeants Voight and Hawkins liable for not responding to his cries for help that he insists one of them "should have overheard" and for refusing to view the security footage from September 5, 2020, after the fact. He does not allege that the Sergeants themselves mistreated him but states instead that they failed to intervene to help him or to review Nurse Jane Doe's actions afterwards. Under § 1983, the Sergeants may not be held responsible for Nurse Jane Doe's conduct merely because they are her superior or supervisor (and it is not clear that they are). *See Iqbal*, 556 U.S. at 676. Plaintiff instead must plead that each sergeant, through his own individual actions, violated Plaintiff's rights. *Id.* To be held liable under § 1983, the Sergeants

9

"must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

Plaintiff does not allege that either sergeant was aware on September 5, 2020, that Nurse Jane Doe was mistreating him. He alleges only generally that they monitor security footage and "should have" heard his cries for help. He does not allege that they *did* witness Jane Doe's mistreatment or that they *did* hear his cries for help and failed to intervene, nor could Plaintiff possibly know what the Sergeants saw or heard. He does not allege a basis to hold the Sergeants responsible for not intervening on September 5, 2020. That leaves only his allegation that the Sergeants refused to review the security video. But Plaintiff is not entitled to demand or control an investigation into his complaints against WMH or WCI staff. *See Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (affirming denial of inmate's claim that prison officials failed properly to investigate his grievances because inmate had no "federally protected liberty interest" in a certain resolution or investigation of grievances); *Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003) (affirming that inmate did not state a claim that deputy warden "had failed to properly investigate his grievance"). Plaintiff's recourse was to file a complaint with the hospital, as WCI staff directed him to. He was not entitled to demand a specific, additional response from prison staff. Sergeants Voight and Hawkins did not violate his constitutional rights by refusing to view the security footage.

Plaintiff alleges that he wrote to the WCI Security Director asking him to review security footage from September 5, 2020, but he received no response. He does not allege that the Security Director is aware of Nurse Jane Doe's alleged actions or even that he ever received Plaintiff's letter. Even if he did, Plaintiff has no right to demand WCI staff investigate his complaints, as explained above. Plaintiff does not state a claim against the WCI Security Director.

10

Plaintiff alleges Moon wrongly denied or refused to accept his inmate complaints. Plaintiff's right to submit grievances is procedural and not substantive. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Prison officials "who otherwise did not cause or participate in the underlying conduct" do not incur liability if they mishandle or fail to respond to a grievance. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Plaintiff asserts Moon "refused to do [her] job," but the attachments he included with his complaint refute his assertion. Moon instructed Plaintiff to submit complaints about hospital staff with the hospital and not the prison, and she returned his otherwise problematic inmate complaints with instructions to correct the errors so that the inmate complaint office could process the complaints. Dkt. No. 1-1 at 5, 16–17, 22. Moon is not liable for Plaintiff's failure to follow her instructions and comply with grievance procedures.

Plaintiff alleges Muenchow and ICE Supervisor Pusich wrongly denied his complaints against Moon and concluded that Moon had correctly rejected Plaintiff's inmate complaints. Muenchow and Pusich reviewed Plaintiff's complaints, confirmed that Moon properly rejected them, and instructed Plaintiff what more he could do to contest his grievances. *Id.* at 37, 40. Not receiving the desired response to an inmate complaint does not violate an inmate's constitutional rights. *George*, 507 F.3d at 609. Plaintiff does not state a claim against Muenchow or Pusich.

To the extent Plaintiff claims he was wrongfully denied a criminal investigation into the September 5, 2020 incident, he does not state a claim. Plaintiff has no constitutional right to the prosecution of another person. *See Wright v. Runyan*, 774 F. App'x 311, 312 (7th Cir. 2019) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

Plaintiff does not allege that any defendant acted negligently in denying or delaying him medical treatment or otherwise violating his rights. He alleges that Nurse Jane Doe intentionally

11

denied or delayed his medical treatment and that Officer John Doe intentionally retaliated against him for refusing medical treatment. I will decline to exercise supplemental jurisdiction over any putative state-law claims Plaintiff seeks to bring. 28 U.S.C. § 1367(c)(3).

The court finds that Plaintiff may proceed on the following claims: (1) an Eighth Amendment claim that Nurse Jane Doe denied or delayed him medical treatment and (2) a First Amendment claim of retaliation against the John Doe correctional officer.

Because Plaintiff does not know the names of the defendants he is suing, I will add WCI Warden Randall Hepp as a defendant for the limited purpose of helping Plaintiff identify the defendants. *See Donald v. Cook Cty. Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996). Warden Hepp does not have to respond to the complaint. After Warden Hepp's attorney files an appearance in this case, Plaintiff may serve discovery upon Warden Hepp (by mailing it to his attorney at the address in his notice of appearance) to get information that will help him identify the names of the Doe defendants. For example, Plaintiff may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Plaintiff's discovery requests must be limited to information or documents that will help him learn the real names of the defendants he is suing. Plaintiff may not ask Warden Hepp about any other topic, and Warden Hepp is under no obligation to respond to requests about any other topic.

After Plaintiff learns the names of the people he alleges violated his constitutional rights, he must file a motion to substitute their names for the John and Jane Doe placeholders. I will dismiss Warden Hepp as a defendant once Plaintiff identifies the defendants' names. After the defendants have an opportunity to respond to Plaintiff's complaint, the court will set a deadline for discovery. At that point, Plaintiff may use discovery to get the information he believes he needs to prove his claims.

Plaintiff must identify the names of the John Doe defendants **within sixty days** of Warden Hepp's attorney appearing. If he does not or does not explain to the court why he is unable to do so, the court may dismiss his case based on his failure to diligently pursue it. Civil L.R. 41(c).

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motions to waive payment of the initial partial filing fee (Dkt. Nos. 3 & 8) are **GRANTED**.

**IT IS FURTHER ORDERED** that Waupun Memorial Hospital, Sergeant Voight, Sergeant Hawkins, WCI Security Director, Tonia Moon, J. Muenchow, and ICE Supervisor CPS Pusich are **DISMISSED** as defendants.

**IT IS FURTHER ORDERED** that WCI Warden Randall Hepp shall be named as a defendant for the limited purpose of helping Plaintiff identify the Doe defendants. The clerk's office will update the docket accordingly.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of Plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Warden Hepp.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined.

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the full $350 filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time

the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, the transferring institution shall forward a copy of this order along with Plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal

rights of the parties. Therefore, failure to provide your correct address could result in dismissal of your case for failure to prosecute.

Dated at Green Bay, Wisconsin this 22nd day of December, 2020.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge